CAMELOT BANQUET ROOMS, INC.,
         Plaintiff,

v.                                                    Case No.

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,
         Defendant.

## NOTICE OF REMOVAL

Defendant Mesa Underwriters Specialty Insurance Company ("MUSIC"), by and through the undersigned counsel, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby file its Notice of Removal of the action styled *Camelot Banquet Rooms, Inc. v. Mesa Underwriters Specialty Insurance Company*, Case No. 2025CV3080, from the Milwaukee County Circuit Court to the U.S. District Court for the Eastern District of Wisconsin, Milwaukee Division. The grounds for removal are as follows:

## I.  The State Court Action

1.  Plaintiff Camelot Banquet Rooms, Inc. ("Camelot") commenced the underlying action on April 10, 2025, which it filed its Summons and Complaint in the Milwaukee County Circuit Court, styled *Camelot Banquet Rooms, Inc. v. Mesa Underwriters Specialty Insurance Company*, Case No. 2025CV3080 (the "State Court Action"). A true and correct copy of the Complaint is included as Exhibit A attached hereto.

2.     Camelot's Complaint alleges negligent inspection, breach of contract, and bad faith against MUSIC. (Compl. ¶¶ 32–58.)

3.     MUSIC has not yet filed an answer in the State Court Action, and no answer is required to be filed until May 26, 2025.

4.     A true and correct copy of the State Court Docket Sheet reflecting all filings to date is attached hereto as Exhibit B.

5.     On April 14, 2025, MUSIC was served with a Summons and copy of the Complaint in connection with the State Court Action. A true and correct copy of the affidavit of service is attached as Exhibit C.

6.     The attached documents constitute the only "process, pleadings and orders" in the State Court Action of which MUSIC is aware. *See* 28 U.S.C. § 1446(a).

## II.     Grounds for Removal

7.     This action is properly removed to this Court pursuant to 28 U.S.C. § 1441. There is complete diversity of citizenship between Camelot and MUSIC, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1). Pursuant to 28 U.S.C. § 1446(b), MUSIC timely filed this Notice of Removal within one year of the filing of the Complaint and within thirty days of MUSIC's receipt through service of a pleading or other paper in which MUSIC could ascertain that the case is one which is removable.

## III.     Procedural Requirements for Removal

8.     The Complaint was served on MUSIC on April 14, 2025. Therefore, the removal of this action is timely in accordance with 28 U.S.C. § 1446(b) because the

Notice of Removal was filed within thirty days of MUSIC's receipt of Camelot's Complaint. *See* 28 U.S.C. § 1446(b).

9.      Under 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal. MUSIC is the sole defendant, meaning no other defendant must consent to removal.

10.     Pursuant to 28 U.S.C. § 1446(a), copies of all summons, process, pleadings, motions, and orders that have been filed in the State Court Action are attached hereto as Exhibits A through C.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 130, 1391, 1441(a), and 1446(a) because this action was filed in the Milwaukee County Circuit Court, which is within the territory of the Eastern District of Wisconsin.

12.     No previous application has been made for the requested relief.

13.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff, and a copy is being filed with the Milwaukee County Circuit Court.

14.     MUSIC has submitted the required filing fee to the Clerk of Court.

15.     By filing this Notice of Removal, MUSIC does not waive any defense that may be available to it.

16.     If any question arises regarding the propriety of the removal of this action, MUSIC respectfully requests the opportunity to present a brief and/or oral argument in support of its position that this case is removeable.

3

## A. Diversity of Citizenship

17. This is an action with complete diversity of citizenship between Plaintiff and MUSIC. This Court has original jurisdiction over the State Court Action under federal diversity jurisdiction, 28 U.S.C. § 1332, which provides, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between —
>
> (1) citizens of different States.

28 U.S.C. § 1332(a)(1).

18. Plaintiff Camelot Banquet Rooms, Inc. is a corporation registered under the laws of Wisconsin with its principal place of business at 11400 W. Silver Spring Rd., Milwaukee, WI 53225.

19. Defendant MUSIC is a corporation registered under the laws of New Jersey. with its principal place of business in Branchville, New Jersey.

## B. Amount in Controversy

20. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). A removing defendant must show "what the plaintiff hopes to get out of the litigation," and "if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006); *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ("The demonstration concerns what the plaintiff is

claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.").

21.     The Complaint does not allege a total amount in controversy. The Complaint states only, "Plaintiff's costs to restore the Building following this water damage exceeded $30,000.00." (Compl. ¶ 30.) The Complaint's reference to $30,000.00 is tied to a coverage limit in the applicable policy. (Compl. ¶ 30.) Apart from the breach of contract claim, the Complaint also alleges a claim for negligent inspection, which the Complaint does not allege is subject to the applicable policy's coverage limit. (*See* Compl. ¶¶ 32–40.)

22.     Besides negligent inspection and breach of contract, Plaintiff's Complaint alleges a bad faith claim. Under Wisconsin law, a bad faith claim exposes a defendant to potential liability for punitive damages. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 696–97, 271 N.W.2d 368 (1978). When punitive damages are sought, the amount-in-controversy requirement is satisfied unless "it is clear beyond a legal certainty" that the plaintiff will not recover more than $75,000.00. *Jump v. Schaeffer & Assocs. Ins. Brokerage, Inc.*, 123 Fed. App'x 717, 720 (7th Cir. 2005) ("First the court determines whether punitive damages are recoverable as a matter of state law; if they are, subject matter jurisdiction exists unless it is clear beyond a legal certainty that the plaintiffs under no circumstances would be entitled to recover an amount sufficient to satisfy the jurisdictional amount."). Here, besides actual damages, the Complaint seeks "an award of punitive damages." (Compl. at 14.) Punitive damages recoveries for insurance bad faith claims are not capped at or below

$75,000.00. *See* Wis. Stat. § 895.043(6) ("Punitive damages received by the plaintiff may not exceed twice the amount of any compensatory damages recovered by the plaintiff or $200,000, *whichever is greater*." (emphasis added)). If awarded, punitive damages for Camelot's bad faith claim could exceed the jurisdictional amount of $75,000.00.

23.     Accordingly, the amount in controversy between Camelot and MUSIC related to the allegations in the Complaint exceeds the $75,000.00 amount-in-controversy requirement for diversity jurisdiction.

## IV.     Notice

24.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Milwaukee County Circuit Court and is being served on Camelot.

## V.     Conclusion

Defendant MUSIC hereby removes this case from the Milwaukee County Circuit Court, where it is now pending, to this Court and respectfully requests that this Court assume full jurisdiction of this action and place this action upon the docket of the Court for further proceedings.

Dated: May 14, 2025

Respectfully submitted,

MEISSNER TIERNEY FISHER & NICHOLS S.C.

*/s/ Michael J. Cohen*
Michael J. Cohen (SBN 1017787)
mjc@mtfn.com
Caleb R. Gerbitz (SBN 1122558)
crg@mtfn.com
111 E. Kilbourn Avenue, 19th Floor
Milwaukee, WI 53202
Tel: (414) 273-1300
Fax: (414) 273-5840

*Counsel for Defendant, Mesa Underwriters*
*Specialty Insurance Company*

FILED
04-10-2025
Anna Maria Hodges
Clerk of Circuit Court
2025CV003080
Honorable Thomas J.
McAdams-07
Branch 7

STATE OF WISCONSIN  CIRCUIT COURT  MILWAUKEE COUNTY

CAMELOT BANQUET ROOMS, INC.,
11400 W. SILVER SPRING RD.,
MILWAUKEE, WI 53225,

                Plaintiff,

v.

                                    Case No.
                                    Case Code: 30301

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,
C/O CSC-LAWYERS INCORPORATING
SERVICE COMPANY,
8040 EXCELSIOR DRIVE, SUITE 400,
MADISON, WI 53717,

                Defendant.

## SUMMONS

THE STATE OF WISCONSIN, to the named above-named Defendant:

      You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

      Within 45 days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Milwaukee County Courthouse, 901 N. 9th Street, Milwaukee, WI 53233, with a copy to Ryan J. Riebe of O'Neil, Cannon, Hollman, DeJong & Laing

EXHIBIT A

S.C., the Plaintiff's attorneys, whose address is 111 E. Wisconsin Ave., Ste. 1400, Milwaukee, WI 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the Court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this April 10, 2025.

O'NEIL, CANNON, HOLLMAN, DEJONG & LAING S.C.
Attorneys for Plaintiff Camelot Banquet Rooms, Inc.

*Electronically signed by Ryan J. Riebe*
Ryan J. Riebe
State Bar No. 1101498
Ryan.Riebe@wilaw.com
111 E. Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202
Phone:      (414) 276-5000
Fax:   (414) 276-6581

2

FILED
04-10-2025
Anna Maria Hodges
Clerk of Circuit Court
2025CV003080
Honorable Thomas J.
McAdams-07
Branch 7

STATE OF WISCONSIN  CIRCUIT COURT  MILWAUKEE COUNTY

CAMELOT BANQUET ROOMS, INC.,

                Plaintiff,

v.

                              Case No.
                              Case Code: 30301

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,

                Defendant.

## COMPLAINT

Plaintiff Camelot Banquet Rooms, Inc., by its attorneys, O'Neil, Cannon, Hollman, DeJong & Laing S.C., hereby asserts the following complaint against Defendant Mesa Underwriters Specialty Insurance Company c/o CSC-Lawyers Incorporating Service Company.

## PARTIES

1.    Plaintiff Camelot Banquet Rooms, Inc. ("Plaintiff") is a corporation organized under the laws of the State of Wisconsin that operates its business and has its principal office at 11400 W. Silver Spring Rd., Milwaukee, WI 53225 (the "Property").

2.    Defendant Mesa Underwriters Specialty Insurance Company ("Defendant") is a foreign insurance corporation with an address of 6263 North Scottsdale Road, Suite 300, Scottsdale, AZ 85250.

3

3.      At all times relevant hereto, Plaintiff had a commercial property insurance policy (the "Policy") with Defendant that covered the building (the "Building") and certain personal property located at the Property.

4.      The Policy specifies that service of legal process against Defendant upon any cause of action arising in Wisconsin under the Policy may be made upon CSC-Lawyers Incorporating Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over Defendant in this action pursuant to Wis. Stat. § 801.05 because Defendant is engaged in substantial and not isolated activities within this state, and because this action concerns a promise by Defendant to Plaintiff to insure upon or against the happening of an event and the Plaintiff was a resident of this state when the event out of which this cause of action arose occurred and the event out of which this cause of action arose occurred within this state.

6.      Venue of this action is appropriate pursuant to Wis. Stat. § 801.50 because Plaintiff's claim arose in this county.

## BACKGROUND FACTS

### Defendant's Inspection of the Building

7.      Prior to issuing the Policy to the Plaintiff or around the time Defendant issued the Policy to the Plaintiff, Defendant or an agent acting on its behalf inspected the Building to determine if there were any issues with the Building. Defendant or

4

an agent acting on its behalf subsequently inspected the Building each year (or approximately each year) thereafter.

8.    Plaintiff understood that Defendant's inspector would notify Plaintiff if there were any issues with the Building so that Plaintiff could rectify those issues.

9.    Consistent with Plaintiff's understanding, the Policy contains language that Defendant "ha[s] the right to: a. Make inspections and surveys at any time; **b. Give you reports on the conditions we find**; and **c. Recommend changes**." (emphasis added).

10.    In fact, Defendant did perform inspections and not only recommended changes, it **demanded** Plaintiff make changes to the Property based on its recommendations.  For example, by report dated April 3, 2023, Defendant identified only one issue with the exterior of the building (overgrown trees, shrubs, weeds, and vegetation that needed to be trimmed), and directed Plaintiff to fix that issue and notify Defendant of the same "to avoid notice of cancellation or non-renewal being issued."

11.    Plaintiff relied on Defendant to inform Plaintiff of any issues with the Building following Defendant's inspections.

**Plaintiff Discovers Water Damage in the Building**

12.    In approximately August 2023, Plaintiff hired a general contractor to perform work in the Building.  While moving chairs and tables stored in the Building, Plaintiff's contractor noticed that hardwood flooring in the building was severely warped, prompting the contractor to look into the cause.  Plaintiff's contractor then

5

discovered water damage below the floor, and behind sections of interior trim and drywall.

13.     Investigating further after encountering this water damage, both Plaintiff's contractor and an independent engineer determined that the likely culprits for the damage were damaged rubber membranes around scuppers located on the west wall of the building, along with roof flashing that was failing, causing water damage to the east wall and ceiling of the Building. These conditions were visible and could and should have been caught by Defendant's inspector(s).

14.     At no point did Defendant or its inspector(s) note these issues with the scuppers or roof flashing of the Building, nor did Defendant or its inspector(s) notify Plaintiff of any issues with the scuppers or roof flashing of the Building or instruct Plaintiff that it needed to repair the scuppers or roof flashing of the Building.

15.     The scuppers on the Building were a component of the Building's drainage system. As described by the independent engineer who investigated the leaking issues at the Building, water from the Building roof would flow from the roof, through the parapet via the scuppers, into a small gutter and downspouts, which would then allow the water to drain away from the building.

16.     The roof flashing on the Building was also a component of the Building's drainage system. The purpose of roof flashing is to protect areas where the roof meets walls, chimneys, vents, etc., directing water away from potential entry points for leakage and toward gutters for drainage away from the building.

17.     In reliance on Defendant and its inspector(s) not notifying it of any issues, Plaintiff did not hire any independent inspector to inspect the scuppers or roof flashing, and did not undertake any repairs of the scuppers or roof flashing.

18.     As a result of water leaking into the Building from the broken rubber membranes around the roof scuppers and from failing roof flashings, Plaintiff incurred substantial damages to restore the water-damaged walls of the Building.

19.     Plaintiff would not have had to incur these damages if Defendant and its inspector(s) had conducted adequate inspections of the Building.

**Defendant Wrongfully Denies Plaintiff's Insurance Claim**

20.     Adding insult to injury, after Defendant's inspectors failed to uncover issues with the scuppers and roof flashing of the Building, Defendant denied Plaintiff's insurance claim for the resulting damage to the Building.

21.     While damage for "Fungus, Wet Rot, Dry Rot, and Bacteria," is subject to some exclusions under the general building and personal property coverage portion of the Policy, Plaintiff purchased from Defendant additional coverage to cover up to $15,000.00 in damages due to "Fungus, Wet Rot, Dry Rot, and Bacteria" that resulted from a "specified cause of loss" other than fire or lightning.

22.     The Policy defines "Specified causes of loss" to include "water damage," and further defines "Water damage" to include "Accidental discharge or leakage of water or steam as the direct result of the **breaking apart or cracking of** a plumbing, heating, air conditioning **or other system** or appliance (other than a sump

7

system including its related equipment and parts), that is located on the described premises and contains water or steam." (emphasis added).

23.    As described above, the scuppers on the Building were part of the Building's drainage system, which contained water.

24.    As described above, the breaking apart or cracking of the rubber membrane adhered to the scuppers (a part of the Building's drainage system) was a likely cause of water leakage into the Building.

25.    Similarly, the roof flashing was part of the Building's drainage system, which contained water.

26.    As described above, the breaking apart or cracking of the roof flashing (a part of the Building's drainage system) was a likely cause of water leakage into the Building.

27.    Accordingly, the water damage in this case falls within the scope of "Specified causes of loss," as defined in the Policy, because it involved the leakage of water as the direct result of the breaking apart or cracking of an "other" (here, drainage) system.

28.    Defendant, however, apparently ignored this language when evaluating Plaintiff's insurance claim. Instead of granting coverage under this Policy language, as it should have, Defendant denied Plaintiff's insurance claim, stating only that water damage to the Building was caused by ice damming, which, according to Defendant, was not a "specified cause of loss" as defined by the Policy. Again, this narrow construction of the Policy ignores the reality that water leakage into the

Building was the result of the breaking apart or cracking of components (the roof flashing and rubber membrane adhered to the scuppers) of the Building's drainage system. This narrow construction also ignores that ice dams were not cited as contributing to the breaking apart or cracking of the roof flashing. But for this breaking apart or cracking, water would not have leaked into the building at the flashing or scuppers. Regardless of whether ice dams contributed to the breaking apart or cracking of the Building's drainage system, the "Additional Coverage – Limited Coverage For 'Fungus', Wet Rot, Dry Rot and Bacteria" portion of the Policy contains no exclusion for breaking apart or cracking of a system that was caused by ice dams. Accordingly, there was coverage for Plaintiff's damages under this portion of the Policy.

29. The breaking apart or cracking of the roof flashing and rubber membrane at the scuppers were two independent occurrences. Accordingly, each constitutes a separate "occurrence" under the Policy.

30. Plaintiff's costs to restore the Building following this water damage exceeded $30,000.00. Accordingly Defendant should have paid Plaintiff the full $15,000.00 available under the "Additional Coverage – Limited Coverage for 'Fungus', Wet Rot, Dry Rot, and Bacteria" portion of the Policy for each occurrence (here, the breaking a part or cracking of the roof flashing, and the breaking apart or cracking of the rubber membrane adhered to the scuppers) for a total of $30,000.00 in payments under the Policy.[1]

---

[1] To the extent water damage to the Building was caused by more than two occurrences, Plaintiff reserves the right to seek additional damages under the Policy, subject to the $15,000.00 per

31.    As Defendant acknowledges, leaking into the Building from the broken and/or cracked roof flashing and rubber membrane adhered to the scuppers occurred over the course of several years.    Accordingly, coverage under the "Additional Coverage – Limited Coverage for 'Fungus', Wet Rot, Dry Rot, and Bacteria" portion of the Policy took place over multiple 12-month periods such that Plaintiff's claim is not limited to the $15,000.00 limit for damage occurring during a 12-month period.

### FIRST CAUSE OF ACTION
**Negligent Inspection**

32.    Plaintiff incorporates the preceding allegations of the Complaint as though fully set forth herein.

33.    Defendant undertook inspections of the Building which it should have recognized as necessary for the protection of Plaintiff, its Building, and its Building's contents.

34.    In undertaking inspections of the Building, Defendant owed a duty to exercise reasonable care in connection with such inspections.

35.    Defendant knew or should have known that Plaintiff was relying upon Defendant and its inspections of the Building to identify issues with the Building, including issues with the scuppers and flashing membrane of the Building.

36.    Defendant breached its duty of care in connection with inspections of the Building by failing to adequately perform its inspections and failing to identify the issues with the scuppers or flashing membrane of the Building.

---

occurrence limit of the "Additional Coverage – Limited Coverage for 'Fungus', Wet Rot, Dry Rot, and Bacteria" portion of the Policy.

10

37.    In reliance on Defendant and its inspector(s) not notifying it of any issues, Plaintiff did not hire any independent inspector to inspect the scuppers or roof flashing, and did not undertake any repairs of the scuppers or roof flashing.

38.    If Defendant had performed adequate inspections of the Building, it would have identified issues with the scuppers and flashing membrane of the Building.

39.    If Defendant had notified Plaintiff with issues with the scuppers and flashing membrane of the Building, Plaintiff would have corrected those issues before they caused water to leak into the Building.

40.    As a direct and proximate result of Defendant's failure to adequately inspect the Building and identify issues with the scuppers and flashing membrane, Plaintiff has suffered damages in an amount to be determined at trial to repair water-damaged portions of the Building.

## SECOND CAUSE OF ACTION
### Breach of Contract

41.    Plaintiff incorporates the preceding allegations of the Complaint as though fully set forth herein.

42.    Plaintiff made a claim for the damage caused to the Building relating to water damage from water that leaked into the Building as the direct result of multiple occurrences of the breaking apart or cracking of an "other" (here, drainage) system. Up to $30,000.00 of these damages are covered by the Policy.

43.     In spite of Plaintiff's claim being covered under the "Additional Coverage – Limited Coverage for 'Fungus', Wet Rot, Dry Rot and Bacteria" portion of the Policy, Defendant denied Plaintiff's claim.

44.     Despite taking the premium payments from Plaintiff, Defendant ahs failed to provide Plaintiff with the full benefit of the coverage afforded in the Policy.

45.     Plaintiff has performed its obligations under the Policy.

46.     Defendant's duties under the Policy include covenants implied by law to act in good faith and deal fairly in performing its obligations under the Policy.

47.     Defendant's duties further include covenants implied by law to allow the Plaintiff the right to enjoy the fruits of its contractual agreement with Defendant and to do nothing to hinder or obstruct anyone from acting in good faith under the Policy.

48.     Defendant's refusal to pay the full $30,000.00 Policy limit for the "Additional Coverage – Limited Coverage for 'Fungus', Wet Rot, Dry Rot and Bacteria" portion of the Policy, and refusal to act in good faith and deal fairly and otherwise perform its obligations under the Policy amount to a breach of the Policy and a breach of the covenants implied by law.

49.     Plaintiff has made proper demand for Defendant to perform its obligations under the Policy with respect to payment of the claim and despite that demand, Defendant has failed to make such a payment.

50.     As a direct and proximate result of Defendant's breach of the Policy, Plaintiff has been damaged and may sustain additional damages going forward in an amount to be determined at trial.  Additionally, Plaintiff is entitled to interest at 7.5%

per year on each portion of its claim that remains outstanding for more than 30 days pursuant to Wis. Stat. § 628.46.

## THIRD CAUSE OF ACTION
### Bad Faith

51.     Plaintiff incorporates the preceding allegations of the Complaint as though fully set forth herein.

52.     Defendant denied coverage for losses Plaintiff suffered to the Building despite the Policy providing coverage for up to $30,000.00 of such losses (for two occurrences).

53.     Defendant's denial of coverage is without any reasonable basis.

54.     Defendant either knew or should have known that there was no reasonable basis for taking its coverage positions.

55.     In denying Plaintiff's claim, Defendant acted with knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

56.     Defendant acted intentionally and unreasonably in its handling and denial of Plaintiff's claim.

57.     Defendant's actions constitute bad faith and have damaged Plaintiff in an amount to be determined at trial.

58.     Defendant's bad faith actions were done maliciously and with intentional disregard to Plaintiff's rights, entitling Plaintiff to an award of punitive damages and actual costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A.     For an award of Plaintiff's actual damages in an amount to be determined at trial;

B.     For an award of punitive damages in an amount to be determined at trial;

C.     For an award of attorneys' fees, costs, and statutory interest in an amount to be determined at trial; and

D.     For such other and further relief as the Court may deem just and equitable.

**A TRIAL BY JURY IS HEREBY DEMANDED.**

Dated this April 10, 2025.

> O'NEIL, CANNON, HOLLMAN, DEJONG & LAING S.C.
> Attorneys for Plaintiff Camelot Banquet Rooms, Inc.
>
> *Electronically signed by Ryan J. Riebe*
> Ryan J. Riebe
> State Bar No. 1101498
> Ryan.Riebe@wilaw.com
> 111 E. Wisconsin Avenue, Suite 1400
> Milwaukee, Wisconsin 53202
> Phone:     (414) 276-5000
> Fax:   (414) 276-6581

14

# Milwaukee County Case Number 2025CV003080 Camelot Banquet Rooms, Inc. vs. Mesa Underwriters Specialty Insurance Company

## Case summary

| **Filing date** | **Case type** | **Case status** |
|---|---|---|
| 04-10-2025 | Civil | Open - Electronic filing |

| **Class code description** | **Responsible official** | **Branch ID** |
|---|---|---|
| Money Judgment | McAdams-07, Thomas J. | 7 |

### Party summary

| Party type | Party name | Party status |
|---|---|---|
| Plaintiff | Camelot Banquet Rooms, Inc. | |
| Defendant | Mesa Underwriters Specialty Insurance Company | |

## Parties

### Plaintiff: Camelot Banquet Rooms, Inc.

| **Date of birth** | **Sex** | **Race** |
|---|---|---|
| | | |

**Address (last updated 04-10-2025)**
11400 W. Silver Spring Rd., Milwaukee, WI 53225 US

#### Attorneys

| **Attorney name** | **Guardian ad litem** | **Entered** |
|---|---|---|
| Riebe, Ryan J | No | 04-10-2025 |

### Defendant: Mesa Underwriters Specialty Insurance Company

| **Date of birth** | **Sex** | **Race** |
|---|---|---|
| | | |

**Address (last updated 04-10-2025)**
8040 Excelsior Drive, Suite 400, Madison, WI 53717 US

#### Attorneys

| **Attorney name** | **Guardian ad litem** | **Entered** |
|---|---|---|
| Cohen, Michael J. | No | 04-25-2025 |
| Gerbitz, Caleb R | No | 04-25-2025 |

## Court record

EXHIBIT B

| Date | Event | Court official | Court reporter | Amount |
|------|-------|----------------|----------------|--------|
| 04-25-2025 | Notice of retainer | | | |

**Additional text:**

for Defendant, Mesa Underwriters Specialty Insurance Company, filed by Attorney Michael J. Cohen.

| | | | | |
|------|-------|----------------|----------------|--------|
| 04-24-2025 | Notice of retainer | | | |

**Additional text:**

for Defendant, Mesa Underwriters Specialty Insurance Company, , filed by Attorney Michael J. Cohen.

| | | | | |
|------|-------|----------------|----------------|--------|
| 04-24-2025 | eFiled Document Fee Paid | | | $35.00 |

**Additional text:**

Adjustment Number: 25A 045859,
Payable Number: 1232987,
Receipt Number: 25RP017040,
Amount: $35.00

| | | | | |
|------|-------|----------------|----------------|--------|
| 04-18-2025 | Affidavit/Declaration of Service | | | |
| 04-10-2025 | Filing fee paid | | | $304.00 |

**Additional text:**

Adjustment Number: 25A 039708,
Payable Number: 1230042,
Receipt Number: 25RP015093,
Amount: $304.00

| | | | | |
|------|-------|----------------|----------------|--------|
| 04-10-2025 | Case initiated by electronic filing | | | |
| 04-10-2025 | Summons and complaint | McAdams-07, Thomas J. | | |

**FILED**
**04-18-2025**
**Anna Maria Hodges**
**Clerk of Circuit Court**
**2025CV003080**

## AFFIDAVIT OF CORPORATE SERVICE

| Case:<br>25CV3080 | Court:<br>Milwaukee County Courthouse | Court Date: | County:<br>Milwaukee, WI | Job (Client no.):<br>13088920 |
|---|---|---|---|---|
| **Plaintiff / Petitioner:**<br>Camelot Banquet | | | **Defendant / Respondent:**<br>Mesa Underwriters Specialty Insurance Company | |
| **Received by:**<br>Paper Boy Process Service, Inc | | | **For:**<br>O'Neil, Cannon, Hollman, DeJong & Laing S.C. | |
| **To be served upon:**<br>Mesa Underwriters Specialty Insurance Company | | | | |

I, Lynn Dobler, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| | |
|---|---|
| **Recipient Name / Address:** | Mesa Underwriters Specialty Insurance Company, CORPORATE: 33 EAST MAIN STREET SUITE 610, MADISON, WI 53703 |
| **Manner of Service:** | Registered Agent, Apr 14, 2025, 11:30 am CDT |
| **Documents:** | Summons and Complaint, Electronic Filing Notice |

**Additional Comments:**
1) Successful Attempt: Apr 14, 2025, 11:30 am CDT at CORPORATE: 33 EAST MAIN STREET SUITE 610, MADISON, WI 53703 received by Mesa Underwriters Specialty Insurance Company. Age: 57; Ethnicity: Caucasian; Gender: Male; Weight: 260; Height: 6'4"; Hair: Black; Wearing glasses. The document was received by Andrew Schumacher, Authorized representative, Corporation Service Company.

**Fees:**   $65.00

Lynn Dobler

Paper Boy Process Service, Inc
PO BOX 18
Elm Grove, WI 53122
608-212-3719

Subscribed and sworn to before me by the affiant who is
personally known to me.

Notary Public

Date   4/17/25                Commission Expires   4/3/28



## EXHIBIT C